UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 24-47922-tjt |
| Heritage Collegiate Apparel, Inc. f/k/a M-Den, Inc., d/b/a The M Den | In Proceedings Under Chapter 11 |
| | Hon. Thomas J. Tucker |
| Debtor. / | |

**SUPPLEMENTAL EXHIBITS OF PROPOSED REVISIONS TO:**

**(A) PROPOSED ORDER (I) APPROVING LIDS HOLDINGS, INC., OR ITS DESIGNATED SUBSIDIARY AS STALKING HORSE BIDDER, (II) AUTHORIZING THE DEBTOR'S ENTRY INTO AN ASSET PURCHASE AGREEMENT, (III) AUTHORIZING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (IV) APPROVING CERTAIN BID PROCEDURES, BID PROTECTIONS AND DEADLINES, (V) SCHEDULING A SALE HEARING, AND (VI) GRANTING RELATED RELIEF**

**and**

**(B) PROPOSED BID PROCEDURES**

1. The Debtor filed its *Motion for Entry of an Order (I) Approving Lids Holdings, Inc., or its designated subsidiary as Stalking Horse Bidder, (II) Authorizing the Debtor's Entry Into An Asset Purchase Agreement, (III) Authorizing The Sale of the Debtor's Assets Free and Clear of All Encumbrances, (IV) Approving Certain Bid Procedures, Bid Protections and Deadlines, (V) Scheduling a Sale Hearing, And (VI) Granting Related Relief ("Motion")* [DN 54] (the "Motion") on August 27, 2024.

{01074171.1}                                1

2. The Court held a hearing on the Motion on September 4, 2024, at 11:00 a.m. ("Hearing").

3. At the Hearing, subject to some modifications the Debtor placed on the record, the Debtor sought the entry of the proposed *Order (i) Approving Lids Holdings, Inc., or Its Designated Subsidiary as Stalking Horse Bidder, (ii) Authorizing the Debtor's Entry Into an Asset Purchase Agreement, (iii) Authorizing the Sale of the Debtor's Assets Free and Clear of All Encumbrances, (iv) Approving Certain Bid Procedures, Bid Protections and Deadlines, (v) Scheduling a Sale Hearing, and (vi) Granting Related Relief* (the "Proposed Order") and the approval of the Bid Procedures (the "Proposed Bid Procedures"), both of which were attached to the Motion as Exhibits A and B respectively.

4. After the Hearing, the Court issued its Order Regarding the Debtor's Motion for Entry of a Sale Procedures Order and Related Relief (the "Post Hearing Order") [DN 93].

5. In the Post Hearing Order, the Court required certain modifications to the Proposed Order and the Proposed Bid Procedures.

6. Attached as Supplemental Exhibit A is the update Proposed Order, redlined against the Proposed Order attached as Exhibit A to the Motion.

7. Attached as Supplemental Exhibit B is the updated Proposed Bid Procedures redlined against the proposed Bid Procedures attached as Exhibit B to the Motion.

                                    Respectfully Submitted,

                                    SCHAFER AND WEINER, PLLC

                                    /s/ Howard Borin
                                    KIM K. HILLARY (P67534)
                                    HOWARD M. BORIN (P51959)
                                    Proposed Attorneys for Debtor
                                    40950 Woodward Avenue, Suite 100
                                    Bloomfield Hills, MI 48304
                                    (248) 540-3340
Dated: September 6, 2024        hborin@schaferandweiner.com

# Exhibit A

~~Exhibit A~~

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 24-47922-tjt |
| Heritage Collegiate Apparel, Inc. f/k/a M-Den, Inc., d/b/a The M Den | In Proceedings Under Chapter 11 |
| | Hon. Thomas J. Tucker |
| Debtor. / | |

**ORDER (I) APPROVING LIDS HOLDINGS, INC., OR ITS DESIGNATED SUBSIDIARY AS STALKING HORSE BIDDER, (II) AUTHORIZING THE DEBTOR'S ENTRY INTO AN ASSET PURCHASE AGREEMENT, (III) AUTHORIZING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (IV) APPROVING CERTAIN BID PROCEDURES, BID PROTECTIONS AND DEADLINES, (V) SCHEDULING A SALE HEARING, AND (VI) GRANTING RELATED RELIEF**

Heritage Collegiate Apparel, Inc., f/k/a M-Den, Inc., d/b/a The M Den (the "Debtor") having filed its *Motion for Entry of an Order (I) Approving Lids Holdings, Inc., or its designated subsidiary as Stalking Horse Bidder, (II) Authorizing the Debtor's Entry Into An Asset Purchase Agreement, (III) Authorizing The Sale of the Debtor's Assets Free and Clear of All Encumbrances, (IV) Approving Certain Bid Procedures, Bid Protections and Deadlines, (V) Scheduling a Sale Hearing, And (VI) Granting Related Relief* ("Motion"); this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

{01072517.2}1

and 1409; this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estates, its creditors, and other parties in interest; this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Sale Hearing"); this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor; and the Court having entered the Order Regarding the Debtor's Motion for Entry of a Sale Procedures Order and Related Relief [ECF No. 93] (the "Order Regarding Motion"), this Court **HEREBY FINDS THAT**:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

{01072517.22}

B.  The Bidding Procedures[1] <ins>as modified by the Order Regarding Motion</ins> are fair, reasonable, and appropriate under the circumstances of this case and are designed to promote participation and active bidding.

C.  The Bidding Procedures were negotiated at arm's length, in good faith, and without collusion.

D.  The Debtor engaged in a robust and extensive marketing and sale process prior to the Petition Date to solicit and develop the highest or otherwise best offer for its Assets.

E.  The Break-up Fee and Overbid Protections ("Bid Protections") set forth in the Bidding Procedures shall be deemed an actual and necessary cost of preserving the Debtor's estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed administrative expense claim against the Debtor's estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

F.  The Bid Procedures do not prohibit credit bidding in accordance with 11 U.S.C. §363(k).

**IT IS, THEREFORE, HEREBY ORDERED THAT:**

1.  The Motion <ins>as modified by the Order Regarding Motion is</ins> hereby is approved and granted in all respects, except as expressly set forth herein.

2.  <del>All</del> <ins>Subject to the Order Regarding Motion</ins> objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all

---

[1] All capitalized terms not defined in this Order shall have the meanings ascribed to such terms in the Motion.

{01072517.2}

reservations of rights and/or statements included in such objections, are overruled and denied on the merits with prejudice, and the Bidding Procedures are approved as set forth herein.

3. Lids Holdings, Inc., or its designated subsidiary ("Stalking Horse Bidder") is deemed to be a Qualified Bidder and is approved as the Stalking Horse Bidder, except that, notwithstanding anything to the contrary contain in the Stalking Horse Bid attached as Exhibit C to the Motion, the following assets are excluded from the sale to the Stalking Horse or any other bidder:

- , any right to use the M-Den name or the M-Den URL;
- any license agreement with the University of Michigan;
- any trademarks, intellectual property, goodwill, copyright, design patents, or any other property interests ever owned by the University of Michigan and used by the Debtor under any licensing agreement by and between the Debtor and the University of Michigan, including the M-Den name;
- any claims or causes of action relating to any of the foregoing;
- any avoidance actions of any kind against anyone, including any preference or fraudulent transfer actions.

3.

4. In the event that Debtor receives a Qualified Bid (as defined in the Bid Procedures) and Stalking Horse Bidder is not the successful bidder, Stalking Horse Bidder shall receive a breakup fee of $225150,000.

5. The following dates and deadlines are approved:

| September 6, 2024 | Deadline to file APA |
|---|---|
| September 136, 2024 | Bid Deadline |
| September 158, 2024 | Deadline for Debtor to notify Potential Bidders of whether their Bids are Qualified Bids |
| September 180, 2024 | Auction (if necessary) |
| September 180, 2024 | Deadline for Debtors to file and serve Notice of Successful Bidder(s) |

{01072517.24}

| September 19~~1~~, 2024 | Deadline to object to the Sale of the Assets |
|---|---|
| September 20~~12~~, 2024, at 10:00 a.m. | Sale Hearing |

The other hearing dates, deadlines, and notice requirements set forth in the Motion also are approved.

6. If the Debtor after consultation with the Committee determines not to conduct an Auction, it shall file a notice with the Court of such determination within one (1) business day of their making such determination.

7. The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

8. If the Stalking Horse Bidder is determined by the Debtor after consultation with the Committee at the Sale Hearing to be the Winning Bidder, the Debtor, after consultation with the ~~be~~Committee is authorized and entitled to accept the Stalking Horse Bid and to enter into, and to perform their obligations under, a related Asset Purchase Agreement, as the same may be modified, or otherwise amended, prior to the closing thereof by agreement of the Debtor after consultation with the Committee, in its good faith business judgment, and of the Stalking Horse Bidder.

9. Immediately after the entry of this Order, Debtor shall serve this Order via the Court's ECF system, electronic mail, facsimile, or Federal Express for overnight delivery, as the case may be, upon (i) the United States Trustee; (ii) all secured creditors; (iii) the Debtor's twenty (20) largest unsecured creditors; (iv) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (v)

all other entities known to have expressed an interest in a transaction with respect to all or part of the Assets, (vi) E&J Associates, LLC, ~~and~~ (vii) 315-317 SMS, LLC <ins>(viii) counsel for the Committee</ins>.

10. Except as expressly provide herein, nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party <ins>in</ins> intertest (including the Debtor<ins>, the Committee</ins> and the Stalking Horse Bidder) has or may have under applicable bankruptcy and non-bankruptcy law.

11. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon entry hereof.

12. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit B

~~EXHIBIT B~~

# BID PROCEDURES
## Heritage Collegiate Apparel, Inc.

Set forth below are the procedures to be employed by Heritage Collegiate Apparel, Inc., f/k/a M-Den, Inc., d/b/a The M Den ("*Seller*") with respect to the proposed disposition of the Seller's right, title and interest in and to certain "Assets" as more particularly defined in the Stalking Horse Bid Term Sheet between Seller and Lids Holdings, Inc., or its designated subsidiary (the "*Stalking Horse Bidder*"). Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in the Bid Procedures Order

The Seller has entered into a Stalking Horse Bid Term Sheet with the Stalking Horse Bidder for the acquisition by the Stalking Horse Bidder of certain assets of Seller (the "*Stalking Horse Bid*"). The proposed sale to the Stalking Horse Bidder is subject to higher or better offers pursuant to these Bid Procedures, as follows:

1. Bid Deadline: A Qualified Bid for the Assets must be in writing and actually received on or before 5:00 p.m. prevailing Eastern Time on *September 13~~6~~, 2024* (the "*Bid Deadline*"). **Any party other than the Stalking Horse Bidder that does not submit a Qualified Bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

2. Due Diligence: The due diligence period for parties other than the Stalking Horse Bidder shall extend through and including the Bid Deadline.

3. Qualified Bids: A "*Qualified Bid*" is a bid that the Seller, after consultation with the Committee, determines in its sole and absolute discretion (a) is a higher and better bid than the Stalking Horse Bid, and (b) complies with all of the following:

    i. It is irrevocable until the earlier of (i) the approval by the Bankruptcy Court of the winning bidder, and (ii) the conclusion of the Auction; provided, however, that if such Qualified Bid is selected as the highest or otherwise best Qualified Bid (the "*Winning Bid*", and the party submitting the Winning Bid, the "*Winning Bidder*") or the Backup Bid (as defined below), it shall remain irrevocable until the closing of the Sale to the Winning Bidder or the Backup Bidder (defined below), as the case may be;

    ii. It includes a binding term sheet that is marked to show any differences from the Stalking Horse Bid, including the purchase price, which shall be payable in United States Dollars (the "*Proposed Purchase Price*");

    iii. ~~If~~ Seller ~~files~~ shall file a proposed APA with the Stalking Horse Bidder on or before September 6~~3~~, 2024 (the "*Stalking Horse APA*")~~.~~, ~~A~~a

marked-up version of the Stalking Horse APA showing the proposed changes to the Stalking Horse APA shall be included as part of any bid submission.

iv. It is for the purchase of all of the Assets that are the subject of the Stalking Horse Bid, to be purchased in a single transaction;

v. The Proposed Purchase Price includes cash consideration ("***Proposed Cash Consideration***") that is at least $~~250,000~~175,000 greater than the Stalking Horse Bid total cash consideration in the Stalking Horse Bid;

vi. It does not include any request or entitlement to any breakup fee, expense reimbursement or similar type of payment;

vii. It is not conditioned on (i) the outcome of unperformed due diligence by the bidder, or (ii) obtaining any financing.

viii. Includes an acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence prior to making its bid;

ix. It includes an acknowledgement and representation that the bidder (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets to be acquired and liabilities to be assumed in making its bid; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets to be acquired or liabilities to be assumed or the completeness of any information provided in connection therewith, including by Seller, their professionals or any of their respective professionals and advisors, (iii) is a sophisticated party capable of making its own assessments in respect of making its bid; and (iv) has had the benefit of independent legal advice in connection with its bid;

x. It includes evidence, in form and substance reasonably satisfactory to Seller, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the purchase of the Assets;

xi. It is accompanied by a refundable deposit (the "***Deposit***") in the form of a wire transfer (to Seller's counsel's bank account), in accordance with wiring instructions to be provided to competing bidders), in an amount equal to the greater of (A) $250,000 and (B) 10% of the Proposed Cash Consideration, which such Deposit shall be held and disbursed with in accordance with these Bid Procedures and the APA;

xii. it provides for closing of the Sale by no later than September 24~~17~~, 2024;

xiii. it provides evidence satisfactory to the Seller that such Qualified Bidder has the wherewithal and financial ability to consummate the purchase and sale of the Assets in accordance with its Qualified Bid. For the avoidance of doubt, Stalking Horse Bidder and Legends Global Merchandise, LLC or its affiliates have satisfied this provision;

xiv. it contains other information reasonably requested by Seller, or its professionals or advisors; and

xv. it is received no later than the Bid Deadline.

4. <u>Return of Deposit</u>: All Deposits shall be held by the Seller's counsel in trust. If a Qualified Bidder becomes the Winning Bidder, then the Deposit paid by the Winning Bidder whose bid is approved at the Sale Hearing shall be applied to the purchase price to be paid by the Winning Bidder upon closing of the transaction. The Deposit paid by the Backup Bidder (as defined below), if there is a Backup Bidder, shall be retained until the closing of the sale to the Winning Bidder or, if the Backup Bidder becomes the ultimate purchaser pursuant to the Bid Procedures, shall be applied to the purchase price to be paid by the Backup Bidder upon closing of the sale. The Deposits of all bidders (including the Stalking Horse Bidder) not selected as having the highest or otherwise best Qualified Bid or selected as the Backup Bidder shall be returned to such bidders within two (2) business days following the Auction. If an entity selected as the Winning Bidder (including, if selected as the Winning Bidder, the Backup Bidder) breaches its obligations to close, it shall forfeit its Deposit to the Seller; ***provided, however***, that the forfeit of such Deposit shall be in lieu of any other rights in law or equity that Seller has against such breaching entity.

5. <u>Break-Up Fee</u>: Seller has determined, in an exercise of its business judgment, that payment of a break-up fee of $~~225,000~~150,000 as provided in the Stalking Horse Bid (the "***Break-Up Fee***") is necessary to induce the Stalking Horse Bidder to present the Stalking Horse Bid and participate in the Auction, and Seller deems such protections appropriate, necessary and value-additive to the process under the circumstances. Accordingly, if the Stalking Horse Bid is not ultimately the Winning Bid, then the Seller shall pay the Break-Up Fee to the Stalking Horse Bidder in cash concurrent with the closing of the sale to the Winning Bidder (or Backup Bidder as the case may be);

6. <u>No Qualified Bids</u>. If no timely Qualified Bids other than the Stalking Horse Bid (which shall be considered a Qualified Bid by the Stalking Horse Bidder for all purposes of these Bid Procedures) are submitted on or before the Bid Deadline, then Seller shall not hold an Auction and shall request at the Sale Hearing that the Stalking Horse Bidder be deemed the "Winning Bidder" (as

defined below) and that the Bankruptcy Court approve the Stalking Horse APA and the transactions contemplated thereunder.

7. <u>Auction</u>: In the event that Seller timely receives at least one Qualified Bid in addition to the Stalking Horse Bid, then Seller shall conduct an Auction. Unless Seller, after consultation with the Committee, announces a different time and place with notice to all entities submitting a Qualified Bid, the Auction will be conducted at Schafer and Weiner, PLLC, 40950 Woodward Ave., Suite 100, Bloomfield Hills, MI 48304 on ***September 1̶0̶7, 2024 at 10:00 a.m.*** to determine the Winning Bidder. Any bidder submitting a Qualified Bid may appear and submit its highest and best bid at the Auction. The Stalking Horse Bidder shall be deemed to be a bidder submitting a Qualified Bid. The Auction may be adjourned by Seller, after consultation with the Committee, by announcement at the Auction without further notice. Only the Stalking Horse Bidder and the other persons who submitted Qualified Bids prior to the Bid Deadline shall be entitled to make any subsequent bids at the Auction.

8. <u>Auction Procedures</u>: After the expiration of the Bid Deadline, Seller, after consultation with the Committee, shall disclose the terms and conditions of any and all Qualified Bids to the Stalking Horse Bidder and all other Qualified Bidders, and shall advise the Stalking Horse Bidder and all other Qualified Bidders of what Seller, after consultation with the Committee, deems to be the highest or otherwise best Qualified Bid for purposes of the start of the Auction. Subsequent bids (each, an "Overbid") may only be made at the Auction and shall be at least (i) $25,000 over the previous bid plus (ii) for any bidder other than the Stalking Horse Bidder, the Breakup Fee (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid. Seller may, in its business judgment, after consultation with the Committee, announce increases or reductions to the Minimum Overbid at any time during any Auction after the initial Minimum Overbid. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at any Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that Seller, in its business judgment, after consultation with the Committee, deems equivalent that exceeds the then-existing highest Bid by at least the amount of the Minimum Overbid. Each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by Seller. During the Auction, Seller shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of such Overbid and inform each Qualified Bidder whether such Overbid reflects, in Seller's view, the then highest or otherwise best bid(s) for the applicable Assets. To remain eligible to participate in the Auction, in each round of bidding, each Qualified Bidder must submit an Overbid with respect to such round of bidding and to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction. The Auction will be transcribed to ensure an

accurate recording of the bidding at the Auction. At the Auction, bidding may continue until the Seller determines, after consultation with the Committee, that it has received the highest or otherwise best bid for the Assets. After the Seller, after consultation with the Committee, makes such determination, the Auction will be closed.

9. <u>Determination of Winning Bidder</u>. The Seller, after consultation with the Committee, will determine and announce at the conclusion of the Auction which Qualified Bid it has selected as the Winning Bid. At the same time, the Seller will identify the *next* highest or otherwise next best Qualified Bid and announce that the bidder providing such bid has been selected as the "**Backup Bidder**" (the Backup Bidder's highest or otherwise best bid, the "**Backup Bid**"). If a Backup Bidder is identified in accordance with the Bid Procedures, then the Backup Bid shall remain open until the closing of the sale to the Winning Bidder, and available for the Seller's to consummate in the event the Winning Bidder fails to timely consummate the closing.